```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Robert E. Murray, et al.,        :

        Plaintiffs,              :

     v.                          :     Case No. 2:14-cv-2561

Public Citizen, Inc., et al.,    :     JUDGE EDMUND A. SARGUS, JR.
                                       Magistrate Judge Kemp
           Defendants.           :
```

REPORT AND RECOMMENDATION

The plaintiffs in this state law tort case are Robert E. Murray and Murray Energy Corporation. According to the complaint, Mr. Murray is the President, CEO, and Chairman of Murray Energy. Murray Energy is in the coal production business. For jurisdictional purposes, both Mr. Murray and Murray energy are considered to be citizens of the State of Ohio. Their action is based on allegedly defamatory statements made by the defendants in radio ads about Murray Energy's safety and environmental practices. The complaint was filed in the Court of Common Pleas of Belmont County, Ohio, on August 1, 2014.

The filing of the complaint (and an amended complaint) produced a flurry of motions practice in the state court. Defendants Public Citizen, Inc. and Public Citizen Foundation, Inc. filed a motion to dismiss under Ohio Rule of Civil Procedure 12(B)(6), as did defendants CBS Radio East, Inc., Michael Young, and Michael Spacciapolli, and also defendants Capstar TX, LLC, Chuck Poet, and Jim Elliott. Defendants Keymarket of Ohio, LLC, and Jerry L. Hannahs joined in one of those motions, and also moved to strike certain allegations from the complaint. Mr. Spacciapolli filed a separate motion to dismiss which raised lack of personal jurisdiction. See Notice of Removal, Doc. 1.

On December 10, 2014, the Common Pleas Court granted the

motions to dismiss in part.  The Court's Order, which is also an exhibit to the Notice of Removal, dismissed all defendants other than Public Citizen, Inc., and Public Citizen Foundation, Inc., on the ground that they were "mere neutral conduits" for the objectionable message.  The court further found that most of the statements contained in the radio ad were intended to be statements of fact (with the exception of a description of Plaintiffs' actions as being "scare tactics"), and it concluded that those statements referred to both Mr. Murray and Murray Energy.  The only claim against the remaining defendants which was dismissed was Murray Energy's false light invasion of privacy claim.

   Neither of the remaining defendants is an Ohio citizen. Citing to the federal diversity statute, 28 U.S.C. §1332(a), they removed the case from Belmont County one day after that court issued its ruling.  Plaintiffs have moved to remand the case to the court from whence it came, arguing that because the non-diverse defendants were dismissed involuntarily, the case was not properly removed.  Alternatively, they claim that by asking the state court for a merits ruling, the removing defendants waived their right to remove.  The motion is fully briefed.  For the following reasons, it is recommended that the motion to remand be granted.

## I. Discussion

   The first issue raised by the motion to remand is whether the Court must consider, for jurisdictional purposes, the citizenship of an involuntarily dismissed defendant.  In support of their argument that such a party's citizenship remains relevant to the jurisdictional inquiry, the Murray Plaintiffs cite to two district court decisions from the Northern District of Ohio which so hold.  See Allen v. Indep. Concrete Pipe Co., 2004 WL 433898, *1 (N.D. Ohio Mar. 9, 2004); Davis v. Customized

-2-

Transp. Inc., 854 F. Supp. 513, 517 (N.D. Ohio 1994).  In their response, the Public Citizen Defendants do not disagree that, under ordinary circumstances, the involuntary dismissal of a non-diverse defendant does not make a case removable, but they claim that in this case, the original joinder of those defendants was "fraudulent" (a term of art in removal jurisdiction jurisprudence which has nothing to do with fraud as it is ordinarily understood).  If that were true, the Court would be permitted to disregard the dismissed parties' citizenship for diversity purposes.  The Public Citizen Defendants cite to a plethora of cases in the defamation context where that rule has been followed.  They support their claim of fraudulent joinder with statements made at oral argument in the state court to the effect that the Murray Plaintiffs, despite alleging in their complaint, in an effort to state a viable claim, that the "conduit" defendants knew that the statements made in the ads they broadcast were false, the Plaintiffs never had any evidence to back up that claim.  This, say the Public Citizen Defendants, demonstrates that the joinder of those parties was baseless and therefore "fraudulent" for jurisdictional purposes.

In their reply, the Murray Plaintiffs raise, for the first time, the issue of whether the notice of removal was filed timely.  Under 28 U.S.C. §1446(b), a notice of removal must be filed within thirty days of service of the complaint or within thirty days of some later event "from which it may be first ascertained that the case is one which is or has become removable."  The Murray Plaintiffs note that the Public Citizen Defendants' motion to dismiss, filed on October 6, 2014, commented upon the issue of fraudulent joinder of the conduit parties, so that it was apparent to the Public Citizen Defendants well before the issuance of the state court's December 10, 2014 order (and the comment made at oral argument the preceding day) that the case was removable.  Although they dispute the Public Citizen Defendants' assertion that there was never a colorable basis for asserting claims against the conduit defendants, the Murray Plaintiffs argue that if that were

-3-

the case, the notice of removal was not filed within thirty days of the date by which the Public Citizen defendants understood they could remove the case using a fraudulent joinder argument.  In a sur-reply, which the Court will grant leave to file, the Public Citizen Defendants claim that they did not know with any certainty that the Murray Plaintiffs lacked a colorable basis for suing the conduit defendants until counsel admitted as much in open court on December 9, 2014.  Claiming the final word on this issue, the Murray Plaintiffs have filed a response to the sur-reply in which they argue that whatever counsel said at oral argument was neither evidence nor a judicial admission, and is irrelevant to the question of whether the conduit defendants were fraudulently joined and when the Public Citizen Defendants understood they could make such an argument.

    The Court will assume that the "voluntary-involuntary" dismissal rule relied on by the Murray Plaintiffs would apply here, even though it does not appear that the Court of Appeals for the Sixth Circuit has explicitly ruled on this issue.  As another court has observed, commenting specifically on the argument that earlier Supreme Court cases establishing this rule were overruled by a 1949 amendment to the removal statute, "every court of appeals to have considered the issue has concluded that the 'voluntary-involuntary' rule survived the 1949 amendment to the removal statute." Greco v. Beccia, 2001 WL 121887, *3 (M.D. Pa. Feb. 13, 2001)(citing cases from the Second, Seventh, Eight, Ninth, Tenth, and Eleventh Circuit Courts of Appeals).  The rationales behind the rule are that an involuntary dismissal of a non-diverse defendant can be reversed on appeal, which would then destroy diversity jurisdiction and cause the case to "yo-yo" between the state and federal courts, and that the plaintiff should be permitted to choose a state court forum in which to litigate as long as he has reasonable ground for including the non-diverse defendants as parties to the case; that is, "[a]llowing removal only when the plaintiff voluntarily dismisses a defendant ensures that the plaintiff will not be inappropriately

-4-

forced out of state court without his consent." See id. at *2, quoting Pender v. Bell Asbestos Mines, Ltd., 46 F.Supp.2d 937, 940-41 (E.D. Mo.1999). That seems correct, especially given that the removal statutes are to be construed strictly against removal.

This ruling brings into play the issue of fraudulent joinder. As the parties' briefs, including the sur-reply and the response to that brief, frame the issues, there are two questions to be answered: (1) were the non-diverse defendants all fraudulently joined? and (2) if they were, at what point was that fact sufficiently well-established to start the clock running for removal purposes? The Court will take these questions in reverse order, since an answer to the second question which favors the Murray Plaintiffs would eliminate the need to resolve the first.

The answer to this question requires interpretation of the language from §1446 which allows for thirty days to remove a case, starting either when the defendant gets notice of its filing or some later event occurs "from which it may be first ascertained that the case is one which is or has become removable."

There are a number of fairly common situations where courts have had occasion to apply this language (although this case is not one of them). For example, if the event which creates removability is the filing of an amended complaint adding a federal law claim where none was pleaded before, courts have generally held that a state court order allowing such a complaint to be filed – while it certainly suggests that the case will become one which can be removed – does not permit the defendant to "ascertain" that the case is removable. Only the actual filing of the amended complaint does that. See Freeman v. Blue Ridge Paper Products, Inc., 551 F.3d 405 (6th Cir. 2008). In other situations, however, all that is needed for the clock to start running is that it be "intelligently ascertainable" that the federal jurisdictional requirements are present. See, e.g., Nobles v. George T. Underhill & Associates, LLC, 2010 WL 1542516, *3 (W.D. Ky. Apr. 16, 2010)(holding that the defendant's prior knowledge of related

bankruptcy proceedings put it on notice that the case was related to those proceedings even before the plaintiff mentioned that fact in his deposition).  And some courts have imposed the burden on a defendant to pursue, in a timely fashion, information about removability if the initial pleading is ambiguous as to either the amount in controversy or the citizenship of the parties.  See, e.g., McHugh v. Physicians Health Plan of Greater St. Louis, Inc., 953 F.Supp. 296, 300 (E.D. Mo. 1997)(noting that "[m]any courts have imposed on defendants a duty to establish both diversity of citizenship and amounts in controversy within thirty days of the initial pleading" and point out that such a rule furthers the important goal of "promoting prompt determination of the appropriate tribunal").

There are a handful of cases which have construed this language in the context of a removal based on fraudulent joinder.  The court in Tolloty v. Republic Services, Inc., 2012 WL 529881, *5 (N.D. Ohio Feb. 17, 2012), in concluding that certain deposition testimony was sufficient to alert the removing defendant about the possible fraudulent joinder of a non-diverse party, expressed the key concept this way: "the period for timely removal commenced when defendants could have first ascertained that WMO was fraudulently joined."  There, the complaint alleged that a non-diverse defendant, WMO, was responsible for disposing of toxic chemicals in a landfill, which chemicals allegedly caused the plaintiffs' child to contract leukemia, but the deposition testimony showed that the WMO which had been named as a defendant did not exist when the child was exposed to the landfill.  The court held that this testimony was sufficient to allow the other defendants to "ascertain" that WMO had been fraudulently joined (but it remanded the case because they did not file their notice of removal within thirty days of the deposition testimony).  This appears to be a straightforward application of the more general rule that because "removal statutes are to be strictly construed against federal court jurisdiction[,] [w]hen the defendant receives enough facts to

remove on any basis under section 1441, the case is removable, and section 1446's thirty-day clock starts ticking." <u>Durham v. Lockheed Martin Corp.</u>, 445 F.3d 1247, 1253 (9th Cir. 2006).

Ordinarily, a state court ruling that claims against a non-diverse defendant cannot be maintained is not the type of "other paper" from which it can be "first ascertained" that those defendants were fraudulently joined; otherwise, that would swallow the "voluntary-involuntary" rule and allow any case to be removed once the non-diverse defendants were dismissed. Further, it is clear that the actual dismissal of such claims under Rule 12(b)(6) does not prove that fraudulent joinder has occurred, since, for fraudulent joinder purposes, the determinative question is not whether the state court complaint stated a claim against the non-diverse defendants, but whether it was "arguable" that it did so. <u>See Coyne v. American Tobacco Co.</u>, 183 F.3d 488, 493 (6th Cir. 1999)("if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court"). The Public Citizen Defendants do not make that argument, contending instead that it was the statement made by the Murray Plaintiffs' counsel at oral argument on the motion to dismiss that first revealed the fraudulent nature of the joinder. Before that, because the complaint itself actually appeared to state a claim against the "conduit" defendants by alleging their actual knowledge of the falsity of the ads they broadcast, the Public Citizen defendants claim they had no way to know (or to "intelligently ascertain") that there was no possibility that the Murray Plaintiffs could state even a colorable claim against the conduit defendants.

Although the courts have, in some instances - <u>Tolloty</u> being a good example - found that a defendant could not intelligently ascertain that an otherwise facially valid claim against a non-diverse defendant is not viable until more facts are revealed, that is not this case. The Murray Plaintiffs' alleged concession that they had no facts to support their claims against the conduit

defendants was not a particularly crucial event here.  As soon as they received the complaint, it should have been apparent to the Public Citizen Defendants that there were two classes of purportedly liable parties being sued - themselves, the undisputed authors of the content of the ads in question - and all of the other defendants, who were simply broadcasters.  The distinction between the two was clearly highlighted in the motions to dismiss filed by the conduit defendants.  A representative sample of their arguments, found in the CBS Defendants' motion to dismiss (Exhibit 8 to the Notice of Removal, Doc. 1), includes statements to the effect that the courts have rejected any legal obligation on the part of broadcasters to verify statements contained in political advertisements, and that broadcasters who merely publish such ads without authoring or endorsing their content cannot be found liable.  The same arguments were advanced in a brief authored by counsel for the Public Citizen Defendants, who also represented the Capstar Defendants in state court.  <u>See</u> Exhibit 9 to Doc. 1.  The Murray Plaintiffs did not directly address these broadcaster-specific arguments in their response, focusing instead on questions like whether the statements made in the ads were opinion or fact, whether they could be defamatory, and whether they could reasonably be understood to relate not just to Murray Energy but also to Robert Murray personally.  The Common Pleas Court accepted the arguments concerning a lack of broadcaster liability, finding that the conduit defendants "had no duty of care to verify their advertisements."  Doc. 1, Exhibit 16.  It did not (and properly so) rely on any concession by the Murray Plaintiffs' counsel that the allegations in the complaint had no factual support; after all, the motions before the Common Pleas Court were not summary judgment motions but motions to dismiss.

 What all of this tells the Court is that the primary flaw in the Murray Plaintiffs' pleading concerning the conduit defendants, assuming the correctness of the state court's decision, was not a factual one but a legal one which was apparent from the face of the

amended complaint itself. To the extent the claims were of questionable validity (and the Public Citizen Defendants noted in a footnote to their motion to dismiss that the conduit defendants "were named in an effort by Plaintiffs to avoid removal," see Doc. 1, Exhibit 7, pp. 5-6 n.5), the Public Citizens Defendants could have (and likely did) intelligently ascertain that fact from the face of the amended complaint. If they had any doubts about the factual underpinnings of these claims, they had access to some of the conduit defendants through their shared counsel, and could easily have asked the others. It is difficult for this Court to believe that the first time a reasonable defendant in same position would have come to a firm conclusion about the lack of even arguable grounds upon which to join the conduit defendants was when the Murray Plaintiffs' counsel said, at oral argument on a motion to dismiss, that he would like the opportunity to do discovery to support what he contended were sufficient allegations of knowledge and duty to defeat a Rule 12(b)(6) motion. After all, the ordinary way that a fraudulent joinder is analyzed is with reference to the complaint; that is, joinder of a non-diverse defendant is fraudulent if "there is no possibility, *based on the pleadings*, that a plaintiff can state a cause of action against the non-diverse defendant in state court." MBIA Ins. Corp. v. Royal Bank of Canada, 706 F.Supp.2d 380, 393 (S.D.N.Y. 2009)(emphasis supplied).

It is helpful, but not necessarily critical, to note that counsel did not actually concede a lack of evidence to support the allegations made against the conduit defendants. Counsel was asked if he had evidence to back up the allegations made, but before having a chance to answer that, the judge made a statement – "You're getting into dangerous territory making conclusory statements like that, if you don't have any evidence" – to which counsel responded, "Yeah. And you know, we looked for the people who were responsible ... for doing the ad. And you know, we've made the assertion." See Memorandum in Opposition to Motion to

Remand, Doc. 21, Exhibit A, at 16.  The Court is simply not convinced that this nebulous statement, rather than the questionable legal sufficiency of the claims asserted in the amended complaint against the conduit defendants, is what permitted the Public Citizen Defendants to "first ascertain" that fraudulent joinder had occurred.

The procedure followed by the Public Citizen Defendants can create the proverbial "slippery slope" which can lead to the type of *ad hoc* decision-making inimical to preventing lengthy and uncertain disputes about which court a case will go forward in.  It is, and should be, the rare case where a complaint is, on its face, free from any taint of fraudulent joinder, but then some later event - precipitated by the plaintiff, and not based on any information learned elsewhere by the removing defendant - creates, for the first time, the opportunity to make a persuasive argument that fraudulent joinder has occurred.  Perhaps in a case like Tolloty, where there was no suggestion of joinder of an in-state defendant to defeat removal jurisdiction, and no reason to suspect, from the complaint itself, that the entity named in the complaint had the same or a similar name to a then-defunct entity which was the real tortfeasor - the subsequent discovery of those facts might be considered a clear dividing line between the time when a defendant knew nothing to support removal and when it "first ascertained" the fact that removal was permissible.  But that is clearly the exception, and it does not describe the facts of this case.

Here, if there is an argument to made for removing on the basis of fraudulent joinder of the non-diverse defendants, the essentials of that argument were, primarily if not exclusively, facts known to the Public Citizen Defendants at the time the complaint was filed.  Those Defendants knew that they, and not the broadcasters, authored the ads, and they also appreciated the fact that the way the claims against the conduit defendants were pleaded drew into question whether the legal duty they allegedly breached

-10-

actually exists.  If that were not apparent from the amended complaint itself, the motions to dismiss made it clear.  All of that would raise questions in the mind of a reasonable litigant about the motivation behind joining those defendants, and the Public Citizen Defendants' state court filings make it clear they actually entertained the thought that the joinder was designed to defeat diversity jurisdiction.  To validate their late filing of a notice of removal as timely would be to permit a defendant who has strong reservations about the propriety of the joinder of non-diverse defendants to delay removing the case in the hopes that something - perhaps a deposition, or perhaps an ambiguous statement on a legal point not really pertinent to an argument on a motion to dismiss - will boost the chances that a removal based on fraudulent joinder will succeed.  Allowing such happenstances to define when a case may be removed would promote uncertainty, lead to additional forum-related litigation, and violate the precept that all doubts and uncertainties as to jurisdiction should be construed against removal.  The Court therefore concludes that the removal in this case was not timely under 28 U.S.C. §1446(b) because more than thirty days elapsed between the time the Public Citizen Defendants "first ascertained" the basis of their fraudulent joinder argument and the date they filed their notice of removal.  For those reasons, the motion to remand to state court should be granted.

## II.  Recommended Order

Based on the foregoing analysis, the Court grants the motion for leave to file a sur-reply (Doc. 28) and recommends that the motion to remand to state court (Doc. 10) be granted.

## III.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).

A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).


        /s/ Terence P. Kemp
        United States Magistrate Judge